IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CRAIG McLEAN,

        Plaintiff,

vs.                              Case No. 11-1222-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial
gainful activity (SGA).  The claimant's physical or mental
impairment or impairments must be of such severity that they are
not only unable to perform their previous work but cannot,
considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).   At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

Plaintiff filed his application for disability insurance benefits on July 20, 1999, alleging an onset date of disability of April 1, 1996 (R. at 40).  On December 26, 2000, administrative law judge (ALJ) Susan B. Blaney issued the 1st decision finding that plaintiff was not disabled (R. at 40-46). Plaintiff sought judicial review of the agency decision.  On May 20, 2004 Judge Julie Robinson reversed the decision of the Commissioner and remanded the case for further hearing.  Judge

4

Robinson held that the agency erred by not considering the disability determination from the Department of Veterans Affairs, erred in its credibility determination, and erred by failing to indicate the relative weight to be given to the opinions of three physicians (R. at 680-693).

On May 10, 2006, a 2nd decision was filed by ALJ Melvin Werner, again finding that plaintiff was not disabled (R. at 1248-1255).  On November 27, 2007, the Appeals Council found a number of errors in the 2nd ALJ decision, and remanded the case back for further hearing (R. at 115-117).

On January 29, 2010, a 3rd ALJ decision was issued by ALJ William G. Horne (R. at 25-34).  The ALJ found that plaintiff was last insured for disability insurance benefits on September 30, 2001.  At step one, the ALJ found that plaintiff has not been engaged in substantial gainful activity during any period of time relevant to this adjudication.  At step two, the ALJ found that plaintiff had the following severe impairments: Grave's disease with vision disturbance (double vision, monocular vision, limited peripheral vision, no depth perception), status post injury to both knees, chronic obstructive pulmonary disease (COPD), and obesity (R. at 28).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment (R. at 30).  After determining plaintiff's RFC (R. at 30), the ALJ found at step four that

5

plaintiff could not perform past relevant work (R. at 32).   At
step five, the ALJ found that plaintiff could perform jobs that
exist in significant numbers in the national economy (R. at 33).
Therefore, the ALJ concluded that plaintiff was not disabled (R.
at 34).

On June 22, 2011, the Appeals Council denied plaintiff's
request for review (R. at 15).  Thus, 12 years after plaintiff
filed his application for disability benefits, and 7 years after
Judge Robinson reversed the 1st decision of the Commissioner and
remanded the case for further hearing, plaintiff sought judicial
review of the agency action for the 2nd time.

## III.  Does substantial evidence support the RFC findings of the ALJ?

According to SSR 96-8p, the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonmedical
evidence."  The ALJ must explain how any material inconsistencies
or ambiguities in the evidence in the case record were considered
and resolved.  The RFC assessment must always consider and
address medical source opinions.  If the RFC assessment conflicts
with an opinion from a medical source, the ALJ must explain why
the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.
SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);
Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891

n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings:

> ...claimant had the residual functional
> capacity to perform light work as defined in

> 20 CFR 404.1567(b) except for the following
> nonexertional limitations that reduce the
> claimant's capacity for light work: he must
> have the option to sit for 30 minutes and
> stand for 30 minutes during each hour of the
> workday; only occasional bending, but any
> kneeling, crouching or crawling would be
> incidental to the job; the work environment
> must be clean and relatively free of smoke,
> dust and other pollutants; only occasional
> overhead lifting; avoid heights and
> balancing; and work must not require acute
> vision to perform the job.

(R. at 30).  ALJ Horne, in the 3rd decision, stated that he was

incorporating by reference the medical evidence summary set forth

in the 2nd ALJ decision by ALJ Werner (R. at 29).  ALJ Horne

stated the following in his decision in support of the above RFC

findings:

> The claimant's residual functional capacity
> to perform a range of work at the light level
> of physical exertion is supported by the
> opinions of **every** physician who has evaluated
> this issue, including Dr. Rubini and a
> consultative examiner, Lynn A. Curtis, M.D.

(R. at 32, emphasis added).  However, a review of the medical

records indicates that the ALJ's RFC findings (that plaintiff can

perform a range of light work) are not supported by the opinions

of the physicians who have evaluated plaintiff's RFC.

Dr. Rubini testified at the hearing on December 9, 2009 (R.

at 1219).  Based on his review of the medical records, he opined

the following RFC for the plaintiff:

> I believe that he could lift 20 pounds
> occasionally and 10 pounds frequently.  He
> could sit for six hours during the workday

> provided he could **stand and sit as desired**
> and he could be up and around either **walking
> or standing for a total of two hours during
> the workday** and that he can walk for 15
> minutes at a time and stand for 30 minutes at
> a time.  I think he should avoid certain
> things in the environment such as fumes and
> temperature extremes...only do occasional
> overhead lifting...I think he should avoid
> unsupported heights and delicate balancing.

(R. at 1230, emphasis added).  As noted above, the ALJ found that

plaintiff can perform light work, as defined in 20 CFR

§ 404.1567(b), with certain additional nonexertional limitations.

Light work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20
> pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very
> little, a job is in this category when it
> requires a good deal of walking or standing,
> or when it involves sitting most of the time
> with some pushing and pulling of arm or leg
> controls. To be considered capable of
> performing a full or wide range of light
> work, you must have the ability to do
> substantially all of these activities.

(emphasis added).  A job is in the light work category when it

requires a good deal of walking or standing.  A job is also in

this category when it involves sitting most of the time but with

some pushing and pulling of arm-hand or leg-foot controls.

However, "relatively few unskilled light jobs are performed in a

seated position."  SSR (Social Security Ruling) 83-10, 1983 WL

31251 at *5.  The full range of light work requires standing or

walking, off and on, for a total of approximately 6 hours of an

8-hour workday.  SSR 83-10, 1983 WL 31251 at *6.  Most light jobs, particularly those at the unskilled work level of complexity, require a person to be standing or walking "most" of the workday.  SSR 83-14, 1983 WL 31254 at *4.

ALJ Horne asserts that "every" physician, including Dr. Rubini, opined that plaintiff can perform a range of light work, and his RFC finding states that plaintiff can perform light work as defined in 20 CFR § 404.1567(b).  However, as the regulation and social security rulings make clear, most light work requires that a person be able to stand or walk for "most" of the workday. Relatively few unskilled light jobs are performed at a seated position.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of the activities set forth in § 404.1567(b), including a good deal of walking or standing.  However, Dr. Rubini clearly and unambiguously testified that plaintiff could walk or stand "for a total of two hours during the workday" (R. at 1230).  Dr. Rubini's testimony clearly indicates that plaintiff cannot meet the exertional requirements for a wide range of light work as defined in § 404.1567(b).  Therefore, Dr. Rubini's testimony contradicts the ALJ's finding that plaintiff can perform light work as defined in 20 CFR § 404.1567(b).

Dr. Rubini also testified that plaintiff must be able to "stand and sit as desired" (R. at 1230).  The ALJ himself

10

acknowledged that Dr. Rubini testified that plaintiff must be
able to stand or sit "at his option" (R. at 30).  Dr. Rubini also
stated that plaintiff can walk for 15 minutes at a time, and
stand for 30 minutes at a time (R. at 1230).  However, the ALJ,
in his RFC findings, stated that plaintiff must have the option
to sit for 30 minutes and stand for 30 minutes during each hour
of the workday (R. at 30).  The ALJ did not include in his RFC
findings the opinion of Dr. Rubini that plaintiff must be able to
"stand and sit as desired."  Again, without explanation, and in
violation of SSR 96-8p, the ALJ made RFC findings that do not
correlate with the opinions expressed by Dr. Rubini.  At the
hearing, the vocational expert (VE) testified that if a person
can only sit for 15 minutes or stand for 15 minutes and you need
to continue that through the workday, they would not be able to
work (R. at 1240).[1]  Dr. Rubini testified that plaintiff needed
to sit and stand "as desired," or as the ALJ put it, sit and
stand "at his option."  With this limitation, the VE testimony
indicates that plaintiff would not be able to work.  However, the
ALJ offered no explanation for not including Dr. Rubini's opinion
that plaintiff be allowed to sit and stand as desired in his RFC

---

[1]SSR 83-12 states that most jobs have ongoing work processes which demand that a
worker be in a certain place or posture for at least a certain length of time to accomplish a certain
task.  Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or
stand at will.  Therefore, in cases of unusual limitation of ability to sit or stand, a VE should be
consulted to clarify the implications for the occupational base.  1983 WL 31253 at *4.

findings.

The ALJ will next examine the opinions of Dr. Curtis, who provided a written evaluation on August 20, 2008 (R. at 1009-1019).  The ALJ stated that the opinions of Dr. Curtis indicate that plaintiff can perform a range of work at the light level (R. at 32), and made an RFC finding that plaintiff can perform light work as defined in 20 C.F.R. § 404.1567(b) (R. at 30).  First, Dr. Curtis opined that plaintiff could stand and/or walk for up to 4 hours in an 8 hour workday (R. at 1015).  However, as noted above, a person must be able to stand and/or walk for a good deal of the time, or most of the time, in order to perform a wide range of light work.  The ability to stand and/or walk for up to 4 hours, although more than the 2 hours opined by Dr. Rubini, is still not most of the time.

Second, Dr. Curtis opined that plaintiff is **not** "able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles" (R. at 1017, emphasis added).  Again, the ALJ, without explanation, did not mention this finding by Dr. Curtis, and did not include this limitation in his RFC findings.  Instead, the ALJ stated in his RFC findings that plaintiff should avoid heights and balancing, and work must not require acute vision to perform the job (R. at 30).  In his hypothetical question to the VE, the ALJ was even more vague, stating that plaintiff avoid heights and balancing,

12

and has vision in only one eye (R. at 1236).[2]  Testimony elicited
by hypothetical questions that do not relate "with precision" all
of a claimant's impairments cannot constitute substantial
evidence to support the ALJ's decision.  Hargis v. Sullivan, 945
F.2d 1482, 1492 (10th Cir. 1991).

     The importance of this opinion by Dr. Curtis becomes clear
after reviewing SSR 83-14:

>           Where a person has a visual impairment which
>           is not of Listing severity but causes the
>           person to be a hazard to self and
>           others--usually a constriction of visual
>           fields rather than a loss of acuity--the
>           manifestations of tripping over boxes while
>           walking, inability to detect approaching
>           persons or objects, difficulty in walking up
>           and down stairs, etc., will indicate to the
>           decisionmaker that the remaining occupational
>           base is significantly diminished for light
>           work (and medium work as well).

SSR 83-14, 1983 WL 31254 at *5 (emphasis added).  Thus, according
to SSR 83-14, the opinion of Dr. Curtis that plaintiff is unable
to avoid ordinary hazards at work, such as boxes on the floor,
doors ajar, or approaching people or vehicles, clearly indicates

---

     [2]As the Appeals Council noted in their decision of November 27, 2007, "a limitation to
'use of one eye' is not a specific functional limitation.  A specific assessment of the claimant's
impairment upon his specific functional limitation and how it affects visual tasks such as near
acuity, space depth perception, awareness or hazards etc., is warranted" (R. at 116).  However,
ALJ Horne ignored the Appeals Council decision and included in his hypothetical question that
plaintiff has vision in only one eye.  He did not include the limitation that the work must not
require acute vision to perform the job, which was in his RFC findings, and the ALJ, without
explanation, did not include the limitations put forth by Dr. Curtis.  Furthermore, even though
the ALJ stated at step two that plaintiff had no depth perception (R. at 28), the ALJ inexplicably
failed to include that specific limitation in his RFC findings.

that plaintiff's ability to perform light work is significantly diminished.  The ALJ failed to point to any medical opinion that disputes or contradicts this limitation set forth by Dr. Curtis.

Furthermore, SSR 96-9p states as follows:

> If a visual limitation prevents an individual from seeing the small objects involved in most sedentary unskilled work, or <u>if an individual is not able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles</u>, there will be a significant reduction of the sedentary occupational base.

1996 WL 374185 at *8 (emphasis added).  Thus, SSR 83-14 and 96-9p clearly establish that plaintiff's visual limitations as set forth by Dr. Curtis significantly diminish plaintiff's ability to perform either light or sedentary work.

The court will also briefly examine a written RFC report prepared by Dr. Veloor on June 8, 2005 (R. at 946-952).  Dr. Veloor did opine that plaintiff could stand and/or walk for about 6 hours in an 8 hour workday.  However, Dr. Veloor qualified this opinion by stating that plaintiff would require "frequent breaks for rest" (R. at 946).  When the VE was asked about plaintiff's assertion that he needed additional rest breaks, i.e., nap once a day for 30-45 minutes and rest an additional two or three times per day for 10-20 minutes each time, the VE testified that plaintiff would not be able to work (R. at 1240).  Thus, it would appear that the need for "frequent breaks for rest" might preclude plaintiff's ability to work.  However, inexplicably,

14

neither ALJ Werner nor ALJ Horne mentioned this limitation, or offered any explanation for not including this limitation in plaintiff's RFC.

Finally, the court will review the medical opinion of Dr. Majers, who opined on February 18, 2000 that plaintiff could sit, stand, and/or walk for only a total of 6 hours in an 8 hour workday. Furthermore, plaintiff would need to lie down or recline for at least 15 minutes at a time, for a total of 45 minutes during an 8 hour day (R. at 606). This opinion clearly contradicts the ALJ's assertion that a range of light work is supported by the opinions of "every" physician who has evaluated this issue (R. at 32).

As the above medical opinion evidence makes clear, the opinions of Dr. Rubini, Dr. Curtis, Dr. Veloor and Dr. Majers do not support the ALJ's RFC findings. Many of their limitations would severely limit or preclude light and/or sedentary work. Furthermore, the ALJ fails to cite to any medical source opinion indicating that plaintiff can perform work consistent with the ALJ's RFC findings. For this reason, and given the ALJ's failure to provide any explanation for not including the limitations set forth by these physicians in the RFC findings, the court finds that the ALJ's RFC findings are not supported by substantial evidence, and they fail to comply with the requirements of SSR 96-8p.

15

The only other medical opinion addressing plaintiff's RFC
was a state agency assessment from a non-examining physician, Dr.
Goering.  On July 31, 2001, he opined that plaintiff was limited
in near and far acuity and depth perception, and should avoid all
hazards because of his vision problems (R. at 909-916).  The
ALJ's RFC assessment only limited plaintiff to avoiding work that
required acute vision.  The ALJ's RFC did not mention depth
perception or the need to avoid all hazards.  Furthermore, the
hypothetical question to the VE did not mention limitations in
acuity, depth perception, or the need to avoid hazards.  Again,
the ALJ provided no explanation for not including these
limitations from Dr. Goering in his RFC findings and in the
hypothetical question to the VE.

**IV.  Should this case be reversed and remanded for further
hearing, or reversed for an award of benefits?**

At step five, the burden of proof shifts to the Commissioner
to show that the claimant retains sufficient RFC to perform work
in the national economy.  Lax v. Astrue, 489 F.3d 1080, 1084
(2007); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005).
In light of the errors noted above, the court finds that the
Commissioner has failed to meet their burden of demonstrating
that the plaintiff retains sufficient RFC to perform work in the
national economy.

When a decision of the Commissioner is reversed, it is

within the court's discretion to remand either for further
administrative proceedings or for an immediate award of benefits.
When the defendant has failed to satisfy their burden of proof at
step five, and when there has been a long delay as a result of
the defendant's erroneous disposition of the proceedings, courts
can exercise their discretionary authority to remand for an
immediate award of benefits. Ragland v. Shalala, 992 F.2d 1056,
1060 (10th Cir. 1993). The defendant is not entitled to
adjudicate a case ad infinitum until it correctly applies the
proper legal standard and gathers evidence to support its
conclusion. Sisco v. United States Dept. of Health & Human
Services, 10 F.3d 739, 746 (10th Cir. 1993). A key factor in
remanding for further proceedings is whether it would serve a
useful purpose or would merely delay the receipt of benefits.
Harris v. Secretary of Health & Human Services, 821 F.2d 541, 545
(10th Cir. 1987). Thus, relevant factors to consider are the
length of time the matter has been pending, and whether or not,
given the available evidence, remand for additional fact-finding
would serve any useful purpose, or would merely delay the receipt
of benefits. Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir.
2006). The decision to direct an award of benefits should be
made only when the administrative record has been fully developed
and when substantial and uncontradicted evidence in the record as
a whole indicates that the claimant is disabled and entitled to

benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir.

1986).

As an preliminary matter, plaintiff argues that "substantial

evidence" demonstrates that plaintiff is capable of only

sedentary work (Doc. 10 at 29), and that the grids direct that a

person closely approaching advanced age (ages 50-54) who is

limited to sedentary work will be found disabled (Doc. 10 at 29-

30).  At step five, the burden shifts to the Commissioner to show

that the claimant can perform other work that exists in the

national economy.  Nielson, 992 F.2d at 1120; Thompson v.

Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  To meet this

burden, the Commissioner may rely on the Medical-Vocational

Guidelines (grids). 20 C.F.R. Part 404, Subpt. P, App. 2.

Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).  The grids

contain tables of rules which direct a determination of disabled

or not disabled on the basis of a claimant's RFC category, age,

education, and work experience.  Thompson, 987 F.2d at 1487.  In

summary, the grids should not be applied conclusively in a

particular case unless the ALJ finds that: 1) the claimant has no

significant nonexertional impairment, 2) the claimant can do the

full range of work at some RFC level on a daily basis, and 3) the

claimant can perform most of the jobs in that RFC level.

Thompson v. Sullivan, 987 F. 2d 1482, 1488 (10th Cir. 1993).

However, the table rules do not direct a conclusion of

"disabled" or "not disabled" when an individual's exertional RFC does not coincide with the exertional criteria of any one of the exertional ranges (i.e., sedentary, light).   Sedentary work involves lifting no more than 10 pounds, and is defined as work that primarily involves sitting.   20 C.F.R. § 404.1567(a).   Light work involves lifting from 10-20 pounds, and requires a good deal of standing or walking, or involves sitting most of the time with some pushing and pulling of arm or leg controls.   20 C.F.R. § 404.1567(b).   Thus, the exertional requirements include both lifting limitations, and a person's ability to sit and stand and/or walk at work.   Dr. Rubini, Dr. Curtis, Dr. Veloor, and Dr. Majers indicate that plaintiff can lift at least 10-20 pounds (R. at 1230, 1014, 946, 606), which is consistent with light work. However, their opinions vary widely regarding plaintiff's ability to stand and walk.   Dr. Rubini indicates that plaintiff can stand and walk for up to 2 hours in an 8 hour workday (R. at 1230); Dr. Curtis opined that plaintiff can stand and/or walk for 4 hours in an 8 hour workday (R. at 1015); however, Dr. Veloor opined that plaintiff can stand and/or walk for 6 hours in an 8 hour workday, but needs frequent breaks for rest (R. at 946).   Finally, Dr. Majers opined that plaintiff could sit for 2 hours, stand for 2 hours, and walk for 2 hours in an 8 hour workday (R. at 606), which would preclude all work.

Based on the medical evidence, the court cannot say that

plaintiff's RFC coincides with sedentary work, especially given the fact that all of the physicians opine that plaintiff's exertional ability to lift is consistent with light work, not sedentary work.  For this reason, the court is unable to apply the applicable sedentary rule conclusively.

The first issue for the court to consider is the amount of time that the case has been pending.  Plaintiff filed his application for disability insurance benefits on July 20, 1999 (R. at 40); therefore, this case has been pending for over 13 years.  Furthermore, after Judge Robinson reversed the first decision of the Commissioner and remanded the case for further hearing in 2004, it took another 7 years for the Commissioner to render a final decision which again permitted plaintiff to seek judicial review.  However, despite having 7 years to review the prior remand order and to review the record in this case, the Commissioner has again issued a decision with numerous errors, as set forth above.

The second issue for the court to consider is whether a remand would serve any useful purpose, or would merely delay the receipt of benefits.  Some of the limitations set forth would indicate that plaintiff is disabled (e.g., Dr. Rubini's opinion that plaintiff needs to stand and sit as desired, based on the VE testimony).  Other limitations indicate that they would significantly diminish or erode plaintiff's ability to perform

light or sedentary work (e.g., the opinion of Dr. Curtis regarding plaintiff's vision limitations).[3]  However, as noted above, the five medical opinions regarding plaintiff's limitations vary widely and are not consistent in numerous particulars.  The court will therefore review 10th Circuit cases that have discussed whether to remand the case for further hearing or remand for an award of benefits.

In a number of cases, the 10th Circuit has reversed the decision of the Commissioner and remanded the case for an award of benefits.  Groberg v. Astrue, 415 Fed. Appx. 65, 73 (10th Cir. Feb. 17, 2011 (given a proper analysis and evaluation of his mental impairments, there is no reasonable probability that Groberg would be denied benefits); Madron v. Astrue, 311 Fed. Appx. 170, 182 (10th Cir. Feb. 11, 2009)(giving due consideration to Ms. Madron's significant back pain, there is no reasonable probability that she would be denied benefits); Huffman v. Astrue, 290 Fed. Appx. 87, 89-90 (10th Cir. July 11, 2008)(six years have passed since claimant applied for benefits; given the lengthy delay that has occurred from the Commissioner's erroneous disposition of the matter, the court exercised its discretion to award benefits); Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006)(given the lack of evidence that she would not be

_____

[3]SSR 96-9p indicates that such cases may require the use of vocational resources.  1996 WL 374185 at *8.

disabled in the absence of drug or alcohol use, a remand would serve no useful purpose); Sisco v. U.S. Dept. of HHS, 10 F.3d 739, 746 (10th Cir. 1993)(case pending with Secretary for 8 years; plaintiff exceeded what a claimant can legitimately be expected to prove to collect benefits; furthermore, the record revealed that the ALJ resented plaintiff's persistence, refused to take her case seriously, and at times treated her claim with indifference or disrespect); Williams v. Bowen, 844 F.2d 748, 760 (10th Cir. 1988)(the record fully supports a determination that claimant is disabled); see also Graham v. Sullivan, 794 F. Supp. 1045, 1053 (D. Kan. 1992)(Crow, J., several physicians, including treating physician, opined that plaintiff is disabled, and their opinions stand uncontroverted).

In other cases, the 10th Circuit reversed the decision of the Commissioner and remanded the case for further hearing. Hamby v. Astrue, 260 Fed. Appx. 108, 113 (10th Cir. Jan. 7, 2008)(based on the record, the court was not convinced that a remand would be an exercise in futility); Tucker v. Barnhart, 201 Fed. Appx. 617, 625 (10th Cir. Oct. 19, 2006)(even though case pending for 9 years, additional fact-finding and consideration by ALJ appropriate in the case); Miller v. Chater, 99 F.3d 972, 978 (10th Cir. 1996)(in light of use of incorrect legal framework and other errors, and because the appeals court does not reweigh the evidence, the case was remanded for further proceedings even

though court acknowledged that there had already been four administrative hearings).

In five of the seven cases cited above in which the court remanded for an award of benefits, the court found that the evidence clearly established that plaintiff was disabled.  By contrast, in Hamby, the court found that, based on the facts of the case, a remand would not be an exercise in futility.  In Tucker, the court remanded the case for further hearing even though it had been pending for 9 years because the court found that additional fact-finding and consideration by the ALJ would be appropriate.  In Miller, the court remanded the case for further hearing despite numerous errors, noting that the appeals court does not reweigh the evidence.

In the case presently before the court, the court cannot say that the evidence clearly establishes that plaintiff was disabled for the time period in question.  In light of the wide variance in the medical opinions regarding plaintiff's RFC, and the fact that the court cannot reweigh the evidence, the court finds that a remand for further hearing would serve a useful purpose.  On remand, the ALJ is directed to discuss each of the medical opinions regarding plaintiff's RFC, and make a determination of the relative weight that will be accorded to each opinion, fully complying with the requirements set out in SSR 96-8p. Specifically, the ALJ will either include the limitation of Dr.

23

Curtis that plaintiff is unable to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles, or, in the alternative, will provide an explanation, supported by substantial evidence, indicating why this limitation is not being included in plaintiff's RFC.  The ALJ shall also obtain vocational expert (VE) testimony in order to determine the impact of plaintiff's limitations on his ability to work.

**V.  Other issues raised by plaintiff**

Plaintiff raised a number of other issues, including plaintiff's credibility, the relative weight to be accorded to third party testimony, and plaintiff's obesity.  The court will not reach these issues because they may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical opinion evidence, as set forth above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 20th day of September 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

24